IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY D. SMITH, | ) | |
| *aka Anthony Blackshire*, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No.: 3:05-cv-539 JPG |
| v. | ) | |
| | ) | |
| DIEDRE BATTAGLIA, | ) | |
| | ) | |
| Respondent. | | |

## REPORT AND RECOMMENDATION

This matter has been referred to Magistrate Judge Donald G. Wilkerson by District Judge

J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and

SDIL-LR 72.1(a) for a Report and Recommendation on the Petition for a Writ of Habeas Corpus

filed by the petitioner, Anthony D. Smith (also known as Anthony Blackshire), on August 2,

2005 (Doc. 1).  For the reasons set forth below, it is **RECOMMENDED** that the Petition be

**DENIED**, that this matter be **DISMISSED**, and that the Court adopt the following findings of

fact and conclusions of law:[1]

## FINDINGS OF FACT

On August 20, 1997, Petitioner was convicted by a jury in the Circuit Court of Madison

County, Illinois, of one count of first degree murder.  On March 10, 1998, he was sentenced to

60 years' imprisonment (Doc. 13, Exh. A, pp. 8-9).

### *Direct Appeal*

Petitioner filed a direct appeal of his conviction on August 18, 1999, to the Appellate

---

[1] This Court further **RECOMMENDS** that Lee Ryker, the current Warden of Lawrence
Correctional Center, be substituted for Deirdre Battaglia.

Court of Illinois, Fifth District (Doc. 1, p. 2). Petitioner, represented by counsel, raised three

issues on appeal: 1) that the trial court erred in refusing to sever Petitioner's trial from that of his

codefendants, 2) that his counsel was ineffective for failing to renew the motion to sever at a

later stage in the trial, and 3) that the trial court abused its discretion in sentencing him to 60

years' imprisonment (Doc. 13, Exh. B). In an order dated September 6, 2000, the Illinois

Appellate Court affirmed the conviction (Doc. 13, Exh. A). The appellate court affirmed the trial

court's denial of the motions to sever, finding that the antagonism among the codefendants was

not so severe as to deny Petitioner a fair trial. The appellate court also determined that under

Strickland v. Washington, 446 U.S. 668 (1984), Petitioner's trial counsel was not ineffective for

failing to renew the motion to sever later in the trial. The court also affirmed Petitioner's 60-

year sentence as within the statutory range and not excessive (Doc. 13, Exh. A).

Petitioner sought leave to appeal this ruling to the Illinois Supreme Court on September

19, 2000. Petitioner raised two issues: 1) that he was deprived of a fair trial by the trial court's

denial of his motion to sever his trial from his codefendants, and 2) that his trial counsel was

ineffective for failing to renew the motion to sever at a later stage in the trial. Leave to appeal

was summarily denied on November 29, 2000. People v. Smith, 742 N.E.2d 333 (Table) (Ill.

2000). Petitioner did not seek further review by filing a petition for writ of certiorari in the

United States Supreme Court (Doc. 1, p. 2).

*Collateral Review*

Petitioner, with assistance of counsel, filed a petition for post-conviction relief in the trial

court on March 12, 2001 (Doc. 13, Exh. E). He raised five issues in his petition: 1) that trial

counsel was ineffective for failing to move for a mistrial during opening statements when

codefendant's counsel argued the petitioner was guilty of the offense, 2) that trial counsel was ineffective in failing to pursue a motion for severance, 3) that trial counsel was ineffective for failing to fully investigate the case by failing to interview prosecution witnesses, 4) that trial counsel was ineffective for failing to investigate the relationship between the trial judge and a prosecution witness, and 5) that appellate counsel was ineffective for failing to "raise all the issues raised at trial" (Doc. 13, Exh. E). On August 20, 2001, Petitioner filed an amended petition for post-conviction relief, adding a claim that an inmate incarcerated at Stateville Correctional Center had admitted to Petitioner that he, not Petitioner, killed the decedent. Petitioner argued that this confession exonerated him (Doc. 13, Exh. F). On October 10, 2001, a hearing was held on the Petition (Doc. 16, Exh. W6, p. 11).

The trial court denied post-conviction relief in an order dated August 5, 2002, finding that Petitioner's counsel was not ineffective and there was no significant probability of a different outcome at trial. The trial court further found that the incarcerated inmate's testimony was not credible and that the substance of his testimony was not persuasive to show Petitioner's actual innocence. The trial court also believed that the testimony would have been contradicted by the state's witnesses at trial and therefore would not have resulted in a different outcome (Doc. 13, Exh. G).

Petitioner appealed the denial of post-conviction relief on October 6, 2003 (Doc. 13, Exh. H). He raised two claims: 1) that the trial court abused its discretion in denying post-conviction relief based on the inmate's testimony showing Petitioner's actual innocence, and 2) that trial counsel was ineffective for failing to subpoena alibi witnesses.

The Appellate Court of Illinois, Fifth District, affirmed the denial of post-conviction

relief on August 13, 2004 (Doc. 13, Exh. I).  The appellate court agreed that the inmate's testimony was contradicted at the evidentiary hearing and by the trial record, and that it would not have changed the outcome of the trial.  The Court also found that trial counsel's failure to subpoena alibi witnesses was a matter of trial strategy and therefore not deficient under Strickland.

The Petitioner, acting pro se, sought leave to appeal the affirmance of the denial of post-conviction relief in the Illinois Supreme Court on September 21, 2004 (Doc. 13, Exh. J).  He raised two claims of appellate court error: 1) in affirming the denial of post-conviction relief where Petitioner provided newly discovered evidence of his actual innocence, and 2) in affirming the denial of post-conviction relief where trial counsel failed to subpoena alibi witnesses.  The Supreme Court of Illinois summarily denied the petition for leave to appeal (Doc. 13, Exh. K).

### Federal Habeas Petition

Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 before this Court on August 2, 2005 (Doc. 1), raising the following grounds for relief:

1.  Ineffective assistance of trial counsel for failing to renew a motion for severance of his trial from his codefendants;

2.  Ineffective assistance of trial counsel for failing to subpoena potential alibi witnesses;

3.  Ineffective assistance of trial counsel for failing to interview prosecution witnesses;

4.  Ineffective assistance of trial counsel in failing to obtain the services of an investigator;

5.  Ineffective assistance of trial counsel for failing to discuss trial strategy with codefendants' counsel;

6.  Ineffective assistance of trial counsel for failing to object to opening statements of codefendants' counsel;

7.     Ineffective assistance of trial counsel for failing to investigate a potential conflict of interest between the trial judge and a witness for the state;

8.     Ineffective assistance of trial counsel for failing to seek "jailhouse witness instructions" for the jury;[2]

9.     Ineffective assistance of appellate counsel for failing to raise all claims of the ineffective assistance of Petitioner's trial counsel;

10.    Denial of due process where newly discovered evidence demonstrated Petitioner's actual innocence; and

11.    Abuse of discretion by the trial court in sentencing Petitioner to 60 years' imprisonment.

In a Response, filed on March 6, 2006 (Doc. 13), the Respondent generally argues that all

of Petitioner's claims are either procedurally defaulted, not cognizable, or without merit.  In

reply, Petitioner argues that he did not procedurally default his claims, and that his petition is

entitled to habeas relief on the merits (Doc. 20).

## CONCLUSIONS OF LAW

An inmate in state custody may challenge his underlying state conviction in a petition for

habeas corpus relief filed pursuant to 28 U.S.C. §2254.  Any claim that has been adjudicated on

the merits in a state court proceeding is governed by 28 U.S.C. §2254(d).  Canaan v. McBride,

395 F.3d 376, 382 (7th Cir. 2005).  This code section provides:

>    (d) An application for a writ of habeas corpus on behalf of a person
>    in custody pursuant to the judgment of a State court shall not be
>    granted with respect to any claim that was adjudicated on the
>    merits in State court proceedings unless the adjudication of the
>    claim--

---

[2]Petitioner raises grounds 1-8 as one claim of ineffective assistance of counsel.  Because some of the ineffective assistance of counsel claims will not reach the merits, as described *infra*, the undersigned enumerates each subclaim separately.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### PROCEDURAL DEFAULT

Prior to addressing the merits of the petition, the Court must determine whether any claims have been procedurally defaulted, thereby precluding review by this Court. When a state court addresses a question of federal law and bases its decision on independent and adequate state law grounds--either substantive or procedural--the Federal Courts generally will not disturb such a finding on habeas review. Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."); Miranda v. Lawbook, 394 F.3d 984, 391-392 (7th Cir. 2005) ("A state ground is deemed independent for this purpose only if the state court actually relied on a state rule sufficient to justify its decision . . . . The adequacy of the state ground is a question of federal law . . . ; the ground is considered adequate only if the state court applies the rule in a consistent and principled way" (citations and quotation marks omitted)). This rule recognizes the importance of "finality, comity, and the orderly administration of justice" and the reluctance of the federal courts to rule contrary to the state court on an issue of state law. See Dretke v. Haley, 541 U.S. 386, 388 (2004); Edwards v. Carpenter, 529 U.S. 446, 451 (2000) ("The procedural default doctrine and its attendant 'cause and prejudice' standard are

'grounded in concerns of comity and federalism,' . . . and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack . . . " (citations omitted)).  The object is to allow the state courts the opportunity to address the petitioner's claims in the first instance.  Edwards, 529 U.S. at 451.

Procedural default can occur when "a petitioner does not adequately present a claim to the state court" and there is no showing of "cause and prejudice for the default or . . . that a failure to grant him relief would work a fundamental miscarriage of justice."  Richardson v. Briley, 401 F.3d 794, 801 (7th Cir. 2005) (citation omitted); Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir. 2005) (fundamental miscarriage equals "the conviction of an innocent person."); see also Edwards, 529 U.S. at 451-452.  A petitioner must "fairly present" his claim before the state court in order to allow the state the opportunity to correct any Constitutional violations.  Sanders v. Cotton, 398 F.3d 572, 581 (7th Cir. 2005) (citations omitted).  This fair presentment requirement means that the petitioner must invoke "one complete round of the State's established appellate review process" for each claim.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Bintz v. Bertrand, 403 F.3d 859, 863 (7th Cir. 2005).  He must present "operative facts and controlling legal principles" for the state court to review.  Cotton, 398 F.3d at 580.

"A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."  Bintz, 403 F.3d at 863 (quotation marks and citation omitted).  The burden is upon the respondent to show that the petitioner has procedurally defaulted his claims.  Each of the Petitioner's claims will be reviewed in turn.

***Ineffective Assistance of Trial Counsel***

Petitioner raises eight grounds of ineffective assistance of trial counsel:

1.      for failing to renew a motion for severance of his trial from his codefendants;

2.      for failing to subpoena potential alibi witnesses;

3.      for failing to interview prosecution witnesses;

4.      in failing to obtain the services of an investigator;

5.      failing to discuss trial strategy with codefendants' counsel;

6.      for failing to object to opening statements of codefendants' counsel;

7.      for failing to investigate a potential conflict of interest between the trial judge and a witness for the state;

8.      for failing to seek "jailhouse witness instructions" for the jury.

Petitioner has procedurally defaulted claims 3 through 8 because he did not present those claims at each level of state court review. Petitioner raised Grounds 3, 6, and 7 in his petition for post-conviction relief (Doc 13, Exh. F), but failed to raise them on appeal of the denial of that petition (Doc. 13, Exh. H). Petitioner did not raise Grounds 4, 5, and 8 in direct appeal or his petition for post-conviction relief. In fact, they did not receive any state court review at all. Thus, Grounds 3 through 8 have been procedurally defaulted, and the court will not review them on their merits.

Petitioner raised Ground 1, that his trial counsel was ineffective for failing to renew the motion for severance, in his direct appeal and he sought leave to appeal based on the issue in the Supreme Court of Illinois. Petitioner raised Ground 2, that his trial counsel was ineffective for failing to subpoena alibi witnesses, in his petition for post-conviction relief, on appeal of the denial of that petition, and in his petition for leave to appeal in the Supreme Court of Illinois.

Thus, these grounds were not procedurally defaulted; they will be reviewed on their merits.

*Ineffective Assistance of Appellate Counsel*

The basis of Petitioner's ground 9 is ambiguous.  On the habeas form, petitioner writes:

"The Petitioner was denied his Federal protected Rights to Due Process and Effective Assistance

of Counsel when Appellate Counsel failed to provide Effective Assistance of Counsel on Direct

Appeal in violation of the 6th and 14th amendments of the U.S. Constitution.  (See:  Attached

Pages "Ground Two") (Doc. 1, p. 5).  On the attached page describing "Ground Two" Petitioner

writes:

> The petitioner originally raised this claim in his post-conviction petition, and due
> to court appointed counsel's failure to subpoena Janet Gandy Fowler, the
> Appellate Defender who represented the petitioner on direct appeal, the failure to
> subpoena her and advance a general argument during the post-conviction petition
> proceedings, as well as court appointed counsel on appeal of the dismissal of the
> post-conviction petition constituted a failure to provide a reasonable level of
> assistance--even though it was only presented in the most general of terms, it was
> enough to alert the State Court of the claim.
>
> Appellate counsel's performance was deficient in that counsel's performance
> made errors so serious that counsel was not functioning as counsel which is
> guaranteed by the 6th and 14th Amendments of the U.S. Constitution.  Said errors
> cannot be considered sound appellate strategy, by failing to raise claims of
> ineffective assistance of trial counsel in his post-conviction petition on direct
> appeal.
>
> These claims were ripe for consideration partially, while other aspects of the
> ineffective assistance of counsel claim was dehors and not appropriate for
> consideration on Direct Appeal.
>
> Utilizing the cause and prejudice test, the petitioner alleges that appellate
> counsel's performance failed below an objective level of reasonableness by
> failing to raise the claim properly, and if not but for counsel's failure to raise the
> claim, including all of the pertinate facts there is a reasonable probability that the
> outcome of the proceedings on Direct Appeal would have been different.

Respondent interprets these paragraphs to state a claim of ineffective assistance of appellate

post-conviction counsel (Doc. 13, p. 5, 11). The Court disagrees and believes that Petitioner is raising a claim of ineffective assistance of direct appeal counsel. This belief is based on Petitioner's statement that he raised the issue stated in his petition for post-conviction relief, and his further statement that, "said errors cannot be considered sound appellate strategy." The Court believes, therefore, that Petitioner is attempting to raise the issue of ineffective assistance of direct appeal counsel.

Unfortunately for Petitioner, however, any claim of ineffective assistance of appellate counsel is procedurally defaulted because although he raised the ground in his petition for post-conviction relief (Doc. 13, Exh. E), he failed to raise it on appeal from the denial of that petition (Doc. 13, Exh. H). The claim, therefore, did not receive the requisite one complete round of review in state court, and is thus procedurally barred.[3]

## CAUSE AND PREJUDICE FOR PROCEDURAL DEFAULT

The court must consider whether Petitioner has presented any excuse for the procedural default of the above-noted claims, thereby allowing this Court to consider those claims on the merits. "When a petitioner does not adequately present a claim to the state courts, he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice." Richardson v. Briley, 401 F.3d 794, 801 (7th Cir. 2005) (quotation marks and citation omitted).

---

[3]If the Court's interpretation of the claim is incorrect, and Petitioner intended to raise a claim of ineffective assistance of post-conviction counsel, that claim is also procedurally barred because Petitioner did not raise it in any state court proceeding appearing in the record. Furthermore, claims of ineffective assistance of post-conviction counsel are not cognizable in federal habeas review. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

In order to establish cause, Petitioner must show that "an external impediment" prevented him from presenting his arguments before the state courts. See Bintz v. Bertrand, 403 F.3d 859, 864 (7th Cir. 2005). In order to show prejudice, he must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Perruquet v. Briley, 390 F.3d 505, 515 (7th Cir. 2004) (quotations marks, citation, and emphasis omitted). Petitioner has not shown or even made an argument that any external force prevented him from fairly presenting his claims to the state courts. He further has not met the high burden of showing that the errors at his trial, if any, worked to his actual and substantive disadvantage.

Nor has Petitioner shown or argued that there has been a fundamental miscarriage of justice, which requires a showing that a constitutional violation occurred which "probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995). To meet this burden, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. This requires "a stronger showing than that needed to establish prejudice." Id. Petitioner does present a claim of trial court error in denying his petition for post-conviction relief based upon the allegedly exonerating statements of a fellow inmate (see discussion *infra*), but Petitioner does not present this claim to demonstrate cause and prejudice for his procedural default, but as a claim of trial court error. The burden is on Petitioner to demonstrate cause and prejudice to avoid default. See Perruquet, 390 F.3d at 514. Even so, Petitioner's evidence--the statement of a fellow inmate that Petitioner did not commit the offense--is insufficient to demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of this allegedly exonerating

statement. Petitioner has not, therefore, made a showing to overcome the procedural default of any of the defaulted claims. It is therefore **RECOMMENDED** that Grounds 3 through 9 of the petition be **DENIED**.

GROUNDS NOT COGNIZABLE IN FEDERAL HABEAS REVIEW

Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws of the United States. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law.") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). It is clear that "federal habeas corpus does not reach errors of state law." Johnson v. Bett, 349 F.3d 1030, 1037 (7th Cir. 2003).

***Petitioner's Claim of Actual Innocence Based upon Alleged Exonerating Evidence***

In Ground 10, Petitioner claims the state court erred in denying his petition for post-conviction relief where he offered evidence that someone else committed the crime for which he was convicted, that is, that he was actually innocent of the offense. The trial court held an evidentiary hearing on the claim and found that the incarcerated inmate's testimony was not credible and that the substance of his testimony was not persuasive to show Petitioner's actual innocence. The trial court also believed that the testimony would have been contradicted by the state's witnesses at trial and therefore would not have resulted in a different outcome.

In Herrera v. Collins, the Supreme Court held that an independent claim of actual innocence does not state a ground for habeas relief absent a showing of a constitutional violation except in capital cases, 560 U.S. 390, 416-17 (1993). The Seventh Circuit has interpreted this holding to suggest that "actual innocence is not itself a ground for granting habeas relief in anything other than a capital case." Milone v. Camp, 22 F.3d 693, 705 (7th Cir. 1994). Thus, the

state court's determination that the inmate's testimony was not credible and not persuasive based upon Illinois law does not present a constitutional violation. In habeas review, federal courts "generally must accept a state court's factual findings." Virsnieks v. Smith, 521 F.3d 707, 715 (7th Cir. 2008). Credibility determinations specifically are afforded "great deference." Murrell v. Frank, 332 F.3d 1102, 1112 (7th Cir. 2003). Furthermore, federal courts are 'bound by the state court's interpretations of state law." Lechner v. Frank, 341 F.3d 635, 642 (7th Cir. 2003). Petitioner has not established a separate constitutional violation that would allow this Court to consider this "newly discovered" evidence. For this reason, Petitioner's claim that he is actually innocent of the offense based upon the alleged exonerating statement of a fellow inmate is not subject to habeas review. Accordingly, it is **RECOMMENDED** that Ground 10 of the petition be **DENIED**.

### *Abuse of Discretion in Sentencing*

In Ground 11 Petitioner argues that the trial court abused its discretion in sentencing him to sixty years' imprisonment. This claim is not cognizable in a federal habeas action. Where a state sentence falls within the statutory limit, a federal court will not review the correctness of the sentence in a petition for habeas corpus. See Gleason v. Welborn, 42 F.3d 1107, 1112 (7th Cir. 1994); Bean v. United States, 679 F.2d 683, 685 (7th Cir.1982) ("a criminal sentence can be attacked in a habeas corpus proceeding only if the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair"). See also Solem v. Helm, 463 U.S. 277, 290 (1983) ("Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the

discretion that trial courts possess in sentencing convicted criminals.").

The claim of abuse of discretion in sentencing, as raised by Petitioner here, does not implicate a constitutional error. In his direct appeal, the Illinois Appellate Court found that Petitioner's 60-year sentence was within the statutory range. Petitioner makes no independent claim of constitutional error, except to say the sentence was excessive. Without a claim of a constitutional error, Petitioner's claim is not cognizable in a petition for habeas corpus. See Gleason, 42 F.3d at 1112. Thus, it is **RECOMMENDED** that Ground 11 be **DENIED**.

### MERITS REVIEW

Two of Petitioner's eleven grounds for relief survive the Court's procedural default and cognizability analysis: first, Petitioner's counsel was ineffective for failing to renew the motion for severance of his trial, and second, that Petitioner's counsel was ineffective for failing to subpoena or interview potential alibi witnesses. Petitioner does not allege the Illinois Appellate Court's decisions in these claims were based on an unreasonable determination of the facts, but rather that the Appellate Court's decisions were contrary to established law. Therefore, under 28 U.S.C. § 2254(d)(1), Petitioner must show the Illinois Appellate Court's decisions (1) were contrary to clearly established Federal law; or (2) involved an unreasonable application of Federal law.

Section 2254(d)(1) describes two different methods by which a writ can be granted based on an error by the state court. A state court's decision is "contrary to" clearly established Supreme Court precedent when it reaches a legal conclusion that is opposite to a legal conclusion announced by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Owens v. Frank, 394 F.3d 490, 496-497 (7th Cir. 2005). A state court's conclusion is an

"unreasonable application" of Supreme Court precedent when the state court identifies the correct legal rule as determined by the Supreme Court, but unreasonably applies it to the facts of the case, unreasonably extends a legal principle from existing precedent, or refuses to extend that principle to a new context where it should apply. Owens, 394 F.3d at 496-497 (quoting Williams, 529 U.S. at 405). As the Supreme Court has stated:

> We have made clear that the "unreasonable application" prong of §2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. The state court's application must have been "objectively unreasonable."

Wiggins v. Smith, 539 U.S. 510, 520-521 (2003) (citations omitted); see also Owens, 394 F.3d at 496-497. The writ may not issue merely because the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. Williams, 529 U.S. at 411; see also Owens, 394 F.3d at 497. The burden is on the Petitioner to show that he is entitled to relief. Harding v. Sternes, 380 F.3d 1034, 1043 (7th Cir. 2004).

Section 2254(d)(2) involves the "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." In considering this section, this Court presumes that the state court correctly determined the factual issues; the petitioner bears the burden of show that the state court erred by clear and convincing evidence. 28 U.S.C. §2254(e)(1); See also Benefiel v. Davis, 357 F.3d 655, 659 (7th Cir. 2004).

At the time petitioner's conviction became final, the law was clearly established that the

Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To establish a claim for ineffective assistance of counsel, a convicted defendant must show (1) "that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment," and (2) "that the deficient performance prejudiced the defense."Id., at 687. A petitioner must establish both prongs of the Strickland test to sustain a successful claim. Id. When a court reviews a petitioner's claim, it must evaluate whether his counsel's performance undermined the adversarial process to the extent that "the trial cannot be relied on as having produced a just result." Id. at 686. A court's review of counsel's performance "must be highly deferential." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955).

*Ineffective Assistance of Counsel in Failing to Renew the Motion to Sever*

Petitioner raised Ground 1 in his direct appeal to the Illinois Appellate Court, arguing that his counsel was ineffective for failing to renew the motion to sever the trial. On appeal, the Court articulated the Strickland standard for establishing ineffective assistance of counsel and determined petitioner not to have met that standard (Doc. 13, Exh. A). The Appellate Court summarized the relevant procedural facts and evidence adduced at trial as follows:[4]

_____

[4]Determinations of factual issues made by the state court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of rebutting that presumption by "clear and convincing evidence." Petitioner here does not rebut the factual findings by clear and

On July 12, 1996, defendant was charged by indictment with first-degree murder in the shooting death of Michael Hubbard. Frank Wynne and Eddie Alexander were also charged with Hubbard's death.

On October 8, 1996, over the argument of defendant and his codefendants, the court granted the State's motion to join defendant's prosecution with that of his codefendants, Wynne and Alexander. At a June 10, 1997, hearing concerning the three defendants' motions to sever, the codefendants' attorneys explained that antagonistic defenses would present themselves at the trial because the three defendants would be blaming each other for the murder and because the quantity of evidence against the three defendants was substantially different. Defendant's attorney argued primarily that the cases should be severed because the codefendants' out-of-court statements would unconstitutionally incriminate defendant. The trial court denied the attorneys' motions to sever. At a hearing on August 11, 1997, Alexander's attorney renewed the motion to sever the defendants' trial. The court, stating that sufficiently antagonistic defenses to sever the cases had not been demonstrated, once again denied the motion. On August 14, 1997, the court denied another renewed motion to sever, filed by Alexander's attorney.

Trial

At the trial, Wynne's attorney in opening statements stated the following:

> "Essentially Brendan Wallace is the centerpiece of the State's case. Essentially, the only truthful thing Mr. Wallace has probably told anybody is that Anthony Blackshire blew a man's head off in his car right beside him, about six inches away, and took out part of the windshield. That is the only truthful thing you're going to hear from Brendan Wallace."

> "I believe the evidence that you will hear in this case will be that Mr. Blackshire blew Michael Hubbard's head off in the middle of the car that Brendan Wallace was driving. That is the only--that is the salient fact in this case."

The following evidence was presented by the State at trial.

On April 28, 1996, Hubbard was shot to death in Alton, Illinois, between 11 p.m. and 12 a.m. The State's evidence indicated that the shooting involved two firearms and that a total of nine gunshot wounds were found in Hubbard's body:

---

convincing evidence, thus the Court presumes them to be correct.

five in the head, two in the neck, one in the back, and one in the thigh. Hubbard was living with Cindy Glees, his girlfriend, at the time of his murder. Glees testified that on April 28, 1996, Wynne called Hubbard on the speaker phone and told Hubbard that "folks" were outside. Glees testified that she thereafter looked outside and saw defendant, Brendan Wallace, and Wynne in a white vehicle. Glees testified that Hubbard was a Gangster Disciple and that she believed that his murder was gang-related.

George Smith, who lived near Glees, testified that on April 28, 1996, he approached a white vehicle near his apartment and saw Wynne, defendant, and Wallace and shook their hands. Smith passed Hubbard as Smith was returning to his apartment. Smith testified that about 11:45 p.m. he went to the Tenth Street nightclub and that Wynne, Alexander, Wallace, and defendant arrived shortly thereafter and that they told Smith that Hubbard was at a hotel with a woman.

Laurie Perkins, George Smith's sister and roommate at the time of the murder, testified that on April 28, 1996, Hubbard came to her apartment to borrow a jacket and stated he was going with some "folks" to a club on Tenth Street. Perkins testified that she saw Hubbard walk over to a white vehicle with two black persons in the vehicle.

Dale Angela Smith stated that she spent the evening with defendant the night before the murder and that she saw defendant with Alexander, Wynne, and Wallace at a club on Tenth Street in Alton on April 28, 1996, the night of the murder. Charmay Burnett and Krista Talbert also saw defendant, Wynne, Alexander, and Wallace at the club together on the night of the murder.

Brendan Wallace, who was also charged with Hubbard's murder, entered into a plea agreement with the state prior to the trial. Wallace testified that he was a member of the Gangster Disciples. Wallace testified that on April 27, 1996, he, Alexander, and Wynne were at Alexander's house when Wallace overheard Wynne on the telephone say, "That's gonna cost." Wallace testified that when Alexander asked Wynne about his comment, Wynne stated, "We have to kill [Michael Hubbard]." While the men were later playing football in the park, Wallace asked Wynne why they had to kill Hubbard, and Wynne replied that Hubbard was a gang governor in Chicago, that he had a hit on one of their friends in Chicago, and that he was in Alton on the run from them.

Wallace testified that the next day, April 28, 1996, at about 10:30 p.m., Wallace, Alexander, Wynne, and defendant met at Alexander's residence and that defendant stated, "We're getting ready to go kill [Michael Hubbard]." Wallace testified that defendant's instructions required defendant to accompany Wallace in Wallace's vehicle and required Wynne and Alexander to follow Wallace in defendant's blue vehicle. Wallace testified that defendant instructed Wallace to pick up Hubbard at

the apartments, act as if they were going to the club on Tenth Street, take Hubbard down Salu Street, pull over and act like the car was breaking down, and allow defendant time to shoot Hubbard. Wallace testified that the plan required Wynne and Alexander to follow and Wynne to shoot Hubbard to ensure that Hubbard was dead.

Wallace testified that he and defendant arrived at Hubbard's apartment complex, that they honked the horn, and that Hubbard told them to wait and returned to the apartments. Wallace testified that George Smith came out, asked if they were going to the club on Tenth Street, and shook his and defendant's hands. Wallace testified that Hubbard thereafter returned to the car, defendant jumped in the backseat, and Hubbard sat in the front passenger side of the vehicle. Wallace testified that he drove to Salu Street, but before he feigned car trouble, defendant shot Hubbard in the head several times. Defendant then proceeded to get out of the car, dragging Hubbard's body outside of the vehicle, and shot Hubbard in the buttocks and the back. Wallace testified that after he noticed headlights in his rearview mirror, he drove back to Alexander's residence.

Wallace testified that at Alexander's residence, defendant told Wallace to dispose of the gun. Wallace testified that Wynne and Alexander arrived about five minutes later and that the foursome went into a bedroom, where Wynne and Wallace each placed .38-caliber revolvers on the bed. Wallace testified that Wynne stated that he too had shot Hubbard four times in the head. Wallace testified that after the guns were placed under the skirt of the trailer, the four went to the Tenth Street tavern until it closed, in order to establish an alibi. The next morning, Wallace testified that he, Wynne, and defendant cleaned glass and blood from Wallace's white vehicle and then drove to St. Louis for the repair of the broken window, which had been shot during the murder. Wallace testified that he, Wynne, and defendant then left for Chicago, although Wallace returned to speak with the police once they connected him with the murder.

During the cross-examination of Wallace, Wallace admitted to making three previous inconsistent statements to the police concerning the events of the murder and to having an additional pending felony charge, for aggravated battery, for an altercation in jail. During cross-examination by Wynne's counsel, Wallace answered affirmatively to the questions of whether defendant called the shots and did all the talking and whether defendant shot Hubbard.

Robin Alexander, Eddie Alexander's wife, testified that on April 28, 1996, she eavesdropped on a conversation between her husband and defendant, who were in the bedroom of her home. Robin testified that she heard defendant say that he and Wallace were going to ride together and that they were going to have car trouble. Later that night, after she had returned from being out, Robin testified that Wallace's coat was soaking in the sink. She testified that the next morning she

saw defendant and Wallace scrubbing the inside of Wallace's car. Robin testified that defendant called ever day after the murder, trying to obtain information about the investigation, and that after Wallace had been arrested, defendant stated that he should not have let Wallace come back from Chicago. On cross-examination, Robin admitted to being a Gangster Disciple and to having a new boyfriend.

Officer Michael Gordon testified that when he arrested Wynne, Wynne admitted that he was in Alton on the 27th through the 29th of April 1996, stating he was with Shunika Gipson on the 28th. Wynne also stated that he spent time with Charmay Burnett on the 28th and that he went to the Tenth Street nightclub with Alexander. Wynne further stated that he did not know defendant.

Torrey Allen testified that while incarcerated at the Madison County jail in 1996, he became familiar with defendant. Allen testified that defendant told him that he and another man killed a man and that two guns were used. Allen testified that defendant stated that he was "fronting" Hubbard some dope and that Hubbard continued to come up short, so they killed him. Torrey Allen had three prior felony convictions and was awaiting sentencing on a plea of guilty to four other felonies. When cross-examining Torrey Allen at trial, Wynne's attorney stated, "So, the person that was killed was killed because he owed Anthony Blackshire money for a dope deal, is that right?"

Eddie Alexander presented evidence from his nephew, Ramando Alexander, who was on probation for two felony convictions. Ramando Alexander testified that the only people at Eddie's home on April 28, 1996 were he, Eddie Alexander, Robin Alexander, and Wallace. Ramando testified Eddie did not leave the house until after midnight when Eddie left with Wallace to go to a club on Tenth Street.

Wynne presented evidence concerning Wallace's aggravated battery offense and a stipulation that Wynne rented a room at the Hiway Motor Inn on April 27 and 28, 1996.

Defendant presented evidence of a prior inconsistent statement by Robin Alexander, concerning a discussion between Wallace and Eddie Alexander on Wallace's return to Alton. Defendant also presented evidence from Leslie Paul to discredit the testimony of Allen, who testified about defendant's jailhouse admission. Paul, who had been incarcerated in the Madison County jail with Allen and defendant, testified that Allen "was talking about how he was going to get out of jail by making a statement against" defendant. Paul also testified that a problem arose between Allen and defendant because Allen was stealing things from defendant's cell.

During closing arguments, the following colloquy occurred:

"[Wynne's attorney]: I think that this evidence that most clearly tells us what happened, and I hate to admit this, probably comes from Torrey Allen in terms of the motivation. I think that was just a real bad personal dispute, a personal dispute between Anthony Blackshire and Michael Hubbard. *** I believe that Blackshire showed up in town with murder on his mind. I believe he got a hold of stupid Brendan–

[Defendant's attorney]: I am going to object to what she believes, your Honor. Her belief is not relevant to the case.

[THE COURT]: Overruled. She can argue. ***

[Wynne's attorney]: *** He hooked up with Brendan Wallace, stupid, mean Brendan Wallace. Initially in one of the statements Brendan Wallace said his conversation about killing [Michael Hubbard] took place with Blackshire. I think that was his second statement that said that it was Blackshire that was setting this thing up.

[Wynne's attorney]: *** Brendan Wallace did say that when he testified here that Blackshire did all the talking. Blackshire did all the talking. Blackshire said, "we're going to do this, we're going to do this, and we're going to do this."

Wynne's attorney continued to argue that Wynne was not present when the murder occurred.

The jury found defendant guilty of first-degree murder but returned verdicts of not guilty for both codefendants, Wynne and Alexander.

Defendant and his attorney filed posttrial motions, asserting, among other contentions, that the trial court erred in allowing the State's motion to join defendant's prosecution with codefendants and in refusing to sever the trial of defendant from codefendants and that the trial court erred in allowing Wynne's counsel to argue defendant's guilt or innocence. Defendant asserted in his posttrial motion that his counsel was ineffective. Both defendant and his attorney had the opportunity to argue their motions. The court, after hearing arguments from defendant and his attorney, denied the posttrial motions.

(Doc. 13, Exh. A, pp. 1-8).

The Illinois Appellate Court found first, that the trial court did not err in denying the motions to sever. In so finding, the appellate court determined that under Illinois law, which

favors trying codefendants together, the defenses of the three codefendants were not so antagonistic that one of the defendants could not receive a fair trial jointly with the others. <u>See</u> <u>People v. Bean</u>, 485 N.E.2d 349, 355 (Ill. 1985). The appellate court found that "no egregious examples of antagonism occurred: no attorney commented on any codefendant's failure to testify, no attorney elicited new admissions from witnesses, and no defendant made statements professing his own innocence while condemning the other." The court determined that the defendants' defenses were not inconsistent; all three defendants denied their participation in the murder. The court concluded: "Together, the defendants attacked the State's witnesses, a joint and consistent effort which certainly did not amount to antagonistic defenses. Accordingly, we find that defendants' defenses were not hostile to or even inconsistent with each other." The court further concluded that Wynne's counsel's statements were not so severe as to create an antagonism that deprived defendant of a fair trial (Doc. 13, Exh. A, p. 13).

Having determined that it was not trial court error to deny the motions to sever, the appellate court proceeded to address Petitioner's argument that his trial counsel was ineffective for failing to renew the motion to sever after codefendant Wynne's attorney made alleged antagonistic statements. The appellate court correctly identified <u>Strickland</u> as the applicable standard for evaluating the effectiveness of counsel. The court determined that trial counsel's representation was not objectively unreasonable because filing another motion to sever would have been futile because Wynne's counsel's comments "did not create an antagonism so severe as to render a fair trial impossible" (Doc. 13, Exh. A, p. 15). The court found that "counsel cannot be branded as ineffective where his motion to sever would have been futile and where his failure so to move was conceivably a viable trial strategy considering that defendant's and

codefendants' motions and renewed motions to sever had already been denied prior to trial" (Doc. 13, Exh. A, p. 15). The court further held that defendant suffered no prejudice "because the result of the trial would not have been different but for counsel's alleged deficiency in failing to renew the motion to sever." The court also determined that "there was sufficient evidence to demonstrate defendant's guilt" (Doc. 13, Exh. A, p. 15).

The Illinois Appellate Court did not unreasonably apply federal law when the court held that Petitioner's counsel did not violate Strickland when he failed to renew a motion for severance of Petitioner's trial. The Appellate Court determined that counsel's performance was not deficient because it was highly unlikely that a motion for severance would have been granted. Counsel is not ineffective under Strickland for "failing to pursue arguments that are clearly destined to prove unsuccessful." United States v. Lawson, 947 F.3d 849, 853 (7th Cir. 1991); see also United States v. Rezin, 322 F.3d 443, 446 (7th Cir. 2003) (defendant's counsel is not under a duty to raise a frivolous argument; there are tactical reasons not to make weak arguments). As such, Petitioner does not overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. His counsel's failure to file a futile motion could very well be considered "sound trial strategy." This is a reasonable application of the Strickland standard.

The appellate court also found that Petitioner could not establish the sufficient level of prejudice necessary under Strickland. The Appellate Court noted the lack of antagonism or inconsistencies in the defenses, stating all three defendants denied participation in the murder and no defendant testified from personal knowledge that either of the other two defendants perpetrated the crime. The appellate court cited firmly-established Illinois precedent that

severance will be within the trial court's discretion unless the defendant can show severe antagonism between his and his codefendants' positions at trial. The court further cited facts in Petitioner's case and held that the motion would not have been granted had his counsel moved to sever and that, ultimately, the outcome of his trial would not have been different had the severance been granted. Thus, Petitioner was not prejudiced. This is a reasonable application of <u>Strickland</u>'s prejudice standard. The undersigned finds that the Illinois Court's application of <u>Strickland</u> was neither contrary to nor an unreasonable application of clearly established federal law. It is thus **RECOMMENDED** that Ground 1 of the petition be **DENIED**.

### *Ineffective Assistance of Counsel in Failing to Subpoena Alibi Witnesses*

Petitioner raised Ground 2, that his counsel ineffective for failing to subpoena his potential alibi witnesses, in his petition for post conviction relief (Doc. 13, Exh. F) and on appeal from the denial of that petition (Doc. 13, Exh. H). The appellate court correctly identified <u>Strickland</u> as the controlling precedent (Doc. 13, Exh. H, p. 7). The court made the following determination on this claim:

> The defendant's trial counsel testified at the evidentiary hearing that he and the defendant had discussed the alibi witnesses from Chicago and that the defendant had told him that the witnesses were family members who would be present at the trial to testify. On this basis, the defendant's counsel did not believe it necessary to subpoena the witnesses.
>
> The defendant claimed he was in Chicago at the time of Hubbard's murder. However, the evidence presented at the defendant's trial clearly established that the defendant was not in Chicago at the time of the murder. Because numerous witnesses placed the defendant in Alton during the weekend of and on the night of the crime, defense counsel's failure to call the alleged alibi witnesses who would testify that the defendant was in Chicago on April 28, 1996, was sound trial strategy. Because defense counsel's decision was a matter of trial strategy, it is not subject to scrutiny for ineffective assistance. The defendant's ineffective-assistance-of-counsel claim is not supported by the trial record. The trial court's denial of the defendant's post-conviction petition was not manifestly erroneous.

(Doc. 13, Exh. H, p. 8).

The Illinois Appellate Court also did not unreasonably apply federal law when it held that Petitioner's counsel did not violate <u>Strickland</u> by failing to subpoena Petitioner's alibi witnesses. It was reasonable for the Appellate Court to deem the decision to call alibi witnesses a tactical decision, especially in light of the fact that the alibi witnesses were Petitioner's family members, whose credibility might have been attacked. Furthermore, Petitioner cannot establish prejudice as a result of his counsel's failure to call the alibi witnesses.

Counsel's failure to call witnesses is an insufficient ground for finding ineffective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>United States v. Balzano</u>, 916 F.2d 1273 (7th Cir. 1990); <u>United States v. Olson</u>, 846 F.2d 1103 (7th Cir. 1988); <u>Sullivan v. Fairman</u>, 819 F.2d 1382 (7th Cir. 1987). The Seventh Circuit has recognized that counsel is not obligated to call every potential witness, and "such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record." <u>Balzano</u>, 916 F.2d at 1294.

The Illinois Appellate Court reasonably construed the decision not to call Petitioner's alibi witnesses as a tactical decision. The court pointed to evidence on the record that Petitioner's alibi witnesses were all family members of the defendant, and their testimony would soundly conflict with numerous witnesses who placed defendant in Alton at the time of the murder. Since Petitioner's attorney was aware of the witnesses' relationships to Petitioner, his counsel could have decided not to call the witnesses because they would diminish the credibility of Petitioner's defense. <u>See</u> <u>Hall v. Washington</u>, 106 F.3d 742, 749 (7th Cir. 1997) (stating counsel's decision not to call witnesses are strategically sound if, after reasonably investigation,

the attorney believes the testimony is more likely to harm than help the defendant). The undersigned finds that the appellate court reasonably applied <u>Strickland</u> in concluding the decision not to subpoena potential alibi witnesses was sound trial strategy.

The appellate court also reasonably applied federal law in finding that Petitioner could not establish prejudice under the second prong of the <u>Strickland</u> test. Petitioner could not establish that his counsel's failure to call alibi witnesses prejudiced his trial. The appellate court remarked that the State firmly established Petitioner was in Alton at the time of the murder with at least six different witnesses. It was reasonable for the appellate court to conclude that presentation of alibi witnesses would not have changed the outcome of the trial. The appellate court's finding that Petitioner's counsel was not ineffective under Strickland was not contrary to nor an unreasonable application of clearly established federal law. Thus, the undersigned **RECOMMENDS** that Ground 2 of the petition be **DENIED**.

## CONCLUSION

In summary, it is **RECOMMENDED** that Grounds 1 and 2 of the petition be **DENIED** on their merits; that Grounds 3 through 9 be **DENIED** without review on the merits because each has been procedurally defaulted, and no cause and prejudice has been shown to excuse the default; and that Grounds 10 and 11 be **DENIED** without review on the merits because neither ground is cognizable on habeas review.

For the reasons set forth above, it is **RECOMMENDED** that Lee Ryker be substituted for the respondent, Deirdre Battaglia, that the Petition for a Writ of Habeas Corpus filed by the Petitioner on August 2, 2005 (Doc. 1) be **DENIED**, that this matter be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:  September 23, 2008**

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**